Minahan, Appellant, vs. Minahan, Respondent.
Same, Respondent, vs. Same, Appellant.

*February 23—March 14, 1911.*

*Divorce: Division of property: Discretion.*

Where a divorce was granted to the wife on the ground of cruel
and inhuman treatment, and the husband was found to be worth
$100,000 over and above his debts and to have an income from
his profession of $8,000 per year, a final division of the property
awarding to the wife $23,000, together with the household fur-
niture, is *held,* upon appeals by both parties, to have been, un-
der all the circumstances (more fully stated in the opinion),
a proper exercise of judicial discretion.

Appeals from a judgment of the circuit court for Brown
county: Warren D. Tarrant, Judge. *Affirmed on both ap-
peals.*

. The plaintiff and defendant were married in November,
1899. In October, 1909, the plaintiff commenced an action
for divorce on the ground of cruel and inhuman treatment.
The defendant counterclaimed, alleging cruel and inhuman
treatment and asking for a separate maintenance. There-
after the parties entered into a stipulation whereby it was pro-
vided that the plaintiff should withdraw his complaint and
also his reply to defendant's counterclaim, and that plaintiff
upon the trial should make no attempt to prove the allegations
contained in either said complaint or reply, and that if upon
the proof offered by the defendant under the allegations of
the said counterclaim the court was of the opinion that the
defendant was entitled to a divorce, the defendant should ask
for an absolute divorce, and that if such divorce were granted
the defendant should be awarded the care, custody, and edu-
cation of the two children of the parties, subject to certain
conditions, reserving to the plaintiff the right to see and visit
the children at such times as might be deemed reasonable by
the court, and providing further for the religious education of

such children, and their medical care and attention by the plaintiff. It was further provided that except as to the issues and things stipulated and agreed the questions and issues involved should remain open for litigation upon the trial, and that the stipulation should be of no force or effect unless an absolute divorce were granted.

The court found that the defendant was entitled to a judgment for divorce on her counterclaim. Also that plaintiff was reasonably worth the sum of $100,000 over and above his debts and liabilities, and that in addition thereto his reasonable income from his profession was $8,000, and further that the plaintiff's personal debts amounted to $55,000 and that the indebtedness of the Minahan Building Company amounted to $35,000. It appeared from the testimony that the Minahan Building Company was a corporation having a capital stock of $150,000 and that the plaintiff was the owner and holder of stock in such corporation to the amount of $137,000.

The judgment awarded the care and custody of the two children of the parties to the defendant and also the sum of $30 per month for their support and maintenance, and contained various provisions relating to them. It further recited that of the temporary alimony awarded to the defendant $750 remained unpaid and that the defendant incurred in disbursements in the litigation $343.75, and adjudged that the plaintiff pay said sums to the defendant, together with attorneys' fees amounting to $1,000 in the aggregate, $150 of which amount had been paid, making the total allowance on account of unpaid alimony, disbursements, and counsel fees provided for in the judgment $1,943.75.

As and for a final division of property between the parties it was adjudged that the plaintiff should pay to the defendant the sum of $23,000, $8,000 of which was to be paid within thirty days from the date of the entry of the judgment and $5,000 yearly thereafter, with interest at five per cent. The defendant was likewise awarded all of the household furni-

ture and furnishings, with the exception of some designated articles which it was adjudged the plaintiff should retain. The judgment was made a lien on all the property of the defendant.  Both parties appeal from the judgment.

For the plaintiff there were briefs by *Minahan & Minahan* and *Henry J. Killilea,* and oral argument by *V. I. Minahan.*

For the defendant there was a brief by *Martin, Martin & Martin,* and oral argument by *P. H. Martin.*

BARNES, J.  On the defendant's appeal it is vigorously contended that the court erred in not finding that the plaintiff was worth at least $125,000 at the time of the trial and in refusing to find that his net income from his practice as a physician and surgeon and from other sources amounted to $18,000 per year, and that the award made to the defendant was grossly inadequate even if the findings made by the trial court as to the net worth of the plaintiff and as to his income from his profession had sufficient support in the testimony. On the part of the plaintiff it is urged with scarcely less strenuosity that the court was in error in finding that the plaintiff was worth to exceed the sum of $51,000 and in awarding to the defendant so large a share of the plaintiff's estate as was given to her.  The controversy seems to have engendered more than the usual amount of feeling and bitterness found in such cases, and the zeal displayed in presenting the case indicated that such feeling had extended to some extent to the attorneys in the case as well as to the litigants.  In view of the conclusion arrived at, it is not the custom of this court to make a critical analysis of the testimony or even an elaborate recital of it.

The plaintiff testified that when he was married in 1899 he was worth from $112,000 to $120,000, the greater portion of which was invested in interest-bearing securities which brought him an income of about $5,000 a year.  His income from his practice was a matter of dispute, but concededly

·amounted to $8,000 a year.   Assuming that his stock in the Minahan Building Co..pany was worth par at the time of the trial, the evidence of the plaintiff tended to show that his net worth in 1910 did not vary much from what it was eleven years before, and this the defendant contends must be untrue because the plaintiff met with no serious losses in the meantime and wholly failed to account for an annual outlay for living and other expenses more than sufficient to use up his income.   Because of such failure it is urged that plaintiff did not make a full disclosure of his property.

The court did not make any specific findings by which we are advised as to just how the net worth of the plaintiff was arrived at.   The Minahan Building Company was incorporated in 1906 and was empowered by its articles of incorporation to deal in real estate, to erect and rent buildings, and to furnish and sell light, heat, and water.   It secured a franchise from the city of Green Bay to furnish electricity, water, and air in an area covering about fifteen blocks.   Litigation is now pending in which the validity of this franchise is attacked.   It purchased a building site well located for $24,000, and during 1907 and 1908 erected thereon a modern six-story office and store building of concrete reinforced with steel.   The entire cost of the building and site and lighting plant, as shown by the books of the corporation, was $186,975.88, and there is some evidence tending to show that some moneys were advanced before the books of the corporation were opened and which are not entered on such books. The lighting plant was located in the basement of the building, and the investment therein and in erecting poles and stringing wires and doing such other things as might be necessary to render the plant serviceable was about $47,000.   The building appears to have been ready for occupancy about July 1, 1908.   Sixty-seven per cent. of its space was occupied at the time of the trial and the electric plant was used to the extent of about one third of its capacity.   For the twenty-two

months from July 1, 1908, to May 1, 1910, the income from the building and the lighting plant exceeded the operating expenses by approximately $4,000. The testimony shows that a systematic attempt had been made to secure tenants and that the prospects of renting any considerable part of the vacant space in the near future are not very encouraging.

It is apparent from the foregoing that the value of the plaintiff's stock in the Minahan Building Company is to a large extent a matter of speculation. Whether such a building in a city the size of Green Bay will soon become a paying investment is problematical. To make the venture a paying one it is not only necessary to secure tenants but also to secure rentals commensurate with the cost of the space leased, and it is somewhat significant that after the lapse of nearly two years about one third of the building remains vacant. Reasonable minds might differ materially as to the value of the stock in this corporation at the time of the trial. If we agreed with defendant's counsel that the professional income of the plaintiff since 1899 was larger than he admitted and that his expenses were less than he claimed, we would still be unable to reach the conclusion that the finding of the trial court should be set aside. We think in any view of the case the amount found by the trial court is high enough and that the finding should not be disturbed on the appeal of either party. No direct testimony was offered as to the value of this stock. If there had been, it is not unlikely that honest witnesses would be wide apart on the subject. The facts from which a witness would naturally draw a conclusion were before the court and were no doubt considered by it, and we think the court drew a very fair conclusion from the whole evidence.

The finding of the court that the professional income of the plaintiff was $8,000 per year at the time of the trial has ample support in the testimony and should not be disturbed.

It is next urged by the defendant that the trial court has

found on sufficient evidence that the plaintiff habitually treated his wife in a cruel and inhuman manner during their married life; that the court has found her blameless; and that in view of these facts and of the further fact that the plaintiff's earning capacity is large, the division of property made was manifestly unfair and unjust to the defendant. In this connection it is argued that the wife was equitably entitled to one half of the husband's property and that in no event should the award have been less than one third, and a number of cases are cited in support of such a division. What is a fair division of property depends largely on the facts of each individual case. Former precedents are valuable guides when they rest on facts substantially similar to those existing in the case under consideration, but it seldom happens that a similarity in material facts is met with. It appears in the instant case that the plaintiff has to exceed $137,000 invested in the Minahan Building Company, which, at the present time at least, is bringing in but a very small income. The court found, and the finding has ample support in the testimony, that the personal indebtedness of the plaintiff amounted to $55,500 and that the indebtedness of the building company amounted to about $35,000. The plaintiff's share of this indebtedness would be substantially $32,000, and the interest on these sums would amount to about $5,000 per annum. The plaintiff is carrying life insurance upon which the annual premiums amount to $2,970, and he must either continue to pay these premiums for a considerable period of time or suffer any loss that may result from permitting the policies to lapse. His life insurance and nearly all of his stock in the building company are pledged as collateral security for the payment of his indebtedness, and his homestead is mortgaged. Some of his creditors are insisting on their loans being paid. If he has made a true disclosure of the property which he owns, nearly everything which he has is hypothecated to secure his creditors. It is true that his equity in this property amounts

to a large sum, but it is none the less true that the circumstances of the plaintiff are very different from what they would be were he possessed of convertible property of the value of $100,000 without any indebtedness. A man owning property of the value of $187,000, with an indebtedness of $87,000, is by no means as well off as a man worth $100,000 with no indebtedness, particularly where it is apparent that the property is not presently productive of much income and where it is a matter of conjecture when it will be. It further appears from the testimony on both sides that the plaintiff has arterial sclerosis, an incurable disease, which in a measure prevents him from performing dangerous or delicate operations and which may very materially affect his future earning capacity, particularly if his present business partnership were terminated. It likewise appears that plaintiff amassed his fortune before his marriage with the defendant and that she has an independent fortune of her own amounting to $12,000. In addition to the $23,000 awarded to the defendant she receives practically all of the household furniture and contents, the value of which is not found, and the plaintiff is required to pay the defendant $1,943.75 for attorneys' fees, costs of suit, and arrearage in alimony. To require the payment of any larger sum might well result in compelling the plaintiff to sacrifice his property. The trial court was charged with the duty of exercising proper judicial discretion in making a division of property and its decision will not be disturbed unless it is manifestly unjust. *Hooper v. Hooper,* 102 Wis. 598, 600, 78 N. W. 753. In our opinion that discretion was wisely exercised in the case before us.

We are not unmindful of the plea of the plaintiff's counsel that the award is unjust and excessive and will work undue hardship upon his client. Plaintiff may be placed in an embarrassing situation by the judgment in the case, but as far as the record discloses he alone is responsible for the position in which he finds himself, and we are unable to reach the con-

clusion that the award is excessive. The defendant lived with the plaintiff for nearly ten years. During this time she bore him two children and acted the part of a faithful wife, and during nearly all of the time she was subjected to cruelties and indignities at his hands which stopped short of physical violence, but which were better calculated to hurt and to wound than the scourge or the knout. What the record might disclose had the plaintiff elected to defend his wife's cause of action on the merits does not concern us. He permitted the record to be made up, and we must assume it to be a verity and the plaintiff must abide by it.

*By the Court.*—The judgment appealed from is affirmed on both appeals.